**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4202

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JERRY LEE EDWARDS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:23-cr-00136-KDB-SCR-1)

Argued:  October 30, 2024                          Decided:  February 19, 2025

Before AGEE and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge

Affirmed by published opinion.  Senior Judge Floyd wrote the opinion in which Judge Agee and Judge Rushing joined.

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

FLOYD, Senior Circuit Judge:

This appeal centers on the proper interpretation of North Carolina's special probation statute. *See* N.C. Gen. Stat. § 15A-1351(a). Because we find that the statute's plain language establishes two separate prison terms, we affirm the district court's addition of these terms under the Sentencing Guidelines.

## I.

In October 2023, Jerry Lee Edwards pled guilty to escaping from the custody of a re-entry center in Charlotte, North Carolina. *See* 18 U.S.C. § 751(a) ("Whoever escapes or attempts to escape from the custody of … any institution or facility in which he is confined by direction of the Attorney General …, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both."). Edwards was transferred to the center in March 2023 to complete a 130-month sentence for several 2016 federal drug and firearm offenses. On April 29, 2023, he left the center as authorized for work and never returned. He was arrested a few weeks later following a brief police chase.

During Edwards's sentencing, the district court relied on a presentence report that calculated ten total points for his criminal history: three points for each of three prison sentences exceeding one year and one month—plus one point for receiving seven or more points and committing the instant offense while serving a sentence. *See* U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and

one month"); *id.* § 4A1.2(e)(1) ("Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of … the instant offense is counted"); *id.* § 4A1.1(e) ("Add 1 point if the defendant (1) receives 7 or more points … and (2) committed the instant offense while under any criminal justice sentence").

Edwards objected to this score, arguing that one of his sentences should receive zero points because it did not exceed one year and was imposed over ten years ago. *See id.* § 4A1.2(e)(2) (prison sentences of "one year and one month" or less receive points only if "imposed within ten years of … the instant offense"). Edwards's objection focused on his 2008 North Carolina fleeing-to-elude conviction, for which he originally received special probation. Under North Carolina's special probation statute, "the court may suspend the term of imprisonment and place the defendant on probation … and in addition require that the defendant submit to a period or periods of imprisonment." N.C. Gen. Stat. § 15A-1351(a). Edwards initially received the following special probation sentence: 36 months' probation, 10-to-12 months' suspended imprisonment, and 53 days' active imprisonment. However, he later violated probation, leading the court to activate the suspended term.

At bottom, Edwards argued that his original 53-day active term was part and parcel of his suspended 12-month maximum such that the 53 days should not be counted separately. When understood as a single 12-month prison term, the sentence should receive zero points, he argued, as it did not exceed one year and was imposed over ten years ago, ultimately reducing his total criminal history score to six. *See* U.S.S.G. §§ 4A1.2(e)(2), 4A1.1(e). This reduction would then decrease his criminal history category from V to III and his Guidelines range from 24-to-30 months to 12-to-18 months.

3

The district court overruled the objection, agreeing with the government that the total prison sentence for Edwards's 2008 conviction was 12 months and 53 days. The court relied on U.S.S.G. § 4A1.2(k), which instructs: "In the case of a prior revocation of probation, … add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points." The court therefore found that "the original term of imprisonment" was 53 days, and "the term of imprisonment imposed upon revocation" was 12 months, i.e., the maximum of the 10-to-12-month range. *Id.*; *see also id.* § 4A1.2(b) ("'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed").

When overruling the objection, the court added: "if the Court granted your objection, it would vary upward on the basis of underrepresented criminal history … so it's sort of the same result either way." J.A. 51–52. The court then imposed a 24-month sentence (the bottom of the Guidelines range) and reiterated: "Your criminal history, as I said before, I think it's, frankly, understated. It's really significant, especially your most recent federal offense that you were serving this time for. And so whether or not the Court correctly calculated the criminal history, criminal history V is what the Court would judge your criminal history to be in relation to similarly situated defendants." J.A. 58.

Edwards now timely appeals, noting that the application of U.S.S.G. § 4A1.2(k) to N.C. Gen. Stat. § 15A-1351(a) presents an issue of first impression for this Court.[1]

---

[1] Edwards also objected to the presentence report's two-point offense level increase for reckless endangerment. The district court sustained the objection, and the government does not contest this ruling on appeal.

4

## II.

"In assessing whether a sentencing court has properly applied the Guidelines, we review factual findings for clear error and legal conclusions de novo." *United States v. Mitchell*, 120 F.4th 1233, 1237 (4th Cir. 2024) (quoting *United States v. Thompson*, 874 F.3d 412, 414 (4th Cir. 2017)).

## III.

We begin by analyzing North Carolina's special probation statute.[2] As previewed, this statute writes:

> Under a sentence of special probation, the court may suspend the term of imprisonment and place the defendant on probation … and in addition require that the defendant submit to a period or periods of imprisonment … at whatever time or intervals within the period of probation, consecutive or nonconsecutive, the court determines, as provided in this subsection.

N.C. Gen. Stat. § 15A-1351(a).[3]  At issue in this appeal is whether the statute's suspended and active prison terms are separate such that, if the suspended term is later activated, the terms should be added together under the Guidelines to calculate the total prison sentence.

"When interpreting a North Carolina statute, we apply North Carolina law and

---

[2] The parties primarily focus on the language of the Guidelines, but we find that the language of this statute guides the analysis.

[3] The statute later provides that the active prison period(s) "may not exceed one-fourth the maximum sentence of imprisonment imposed for the offense" and may not be served "beyond two years of conviction."  N.C. Gen. Stat. § 15A-1351(a).

5

'determine how the Supreme Court of North Carolina would rule were it to decide this case.'" *Currituck Cnty. v. LeTendre*, 102 F.4th 252, 259 (4th Cir. 2024) (quoting *Whitmire v. S. Farm Bureau Life Ins. Co.*, 52 F.4th 153, 157 (4th Cir. 2022)).  Because this Court is not aware of a state court opinion that answers the statutory question at issue, "we use the Supreme Court of North Carolina's methodology to interpret it in the first instance."  *Id.* (citing *Whitmire*, 52 F.4th at 157).

Under North Carolina law, "we first look to the statute's plain language" to "divine legislative intent."  *Id.* (citing *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 510 S.E.2d 159, 163 (N.C. 1999)).  "Normally, if the language is clear, we give the statute its plain meaning and end our inquiry."  *Id.* at 260 (citing *Frye*, 510 S.E.2d at 163).  "If the language is ambiguous or unclear, however, we look to the 'legislative history, the spirit of the act[,] and what the act seeks to accomplish.'"  *Id.* (quoting *Lenox, Inc. v. Tolson*, 548 S.E.2d 513, 517 (N.C. 2001)).  "Finally, when 'a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.'"  *Id.* (quoting *Frye*, 510 S.E.2d at 163).

Here, based on its plain language, we find that N.C. Gen. Stat. § 15A-1351(a) establishes two separate prison terms: an active term and a suspended term.  The statute begins by identifying the two terms separately: "Under a sentence of special probation, the court may suspend the term of imprisonment … and *in addition* require that the defendant submit to a period or periods of imprisonment."  *Id*. (emphasis added).  It continues this separate treatment throughout: "*either* the suspended sentence *or* [] the imprisonment

6

required for special probation"; "the total of all periods of confinement imposed as an incident of special probation, *but not including* an activated suspended sentence …"; "no confinement *other than an activated suspended sentence* …." *Id.* (emphasis added).

The statute never contradicts its plain language by stating elsewhere that the "imprisonment required for special probation" is actually part of the suspended sentence. And we have not come across a clear indication that the legislature intended this result. Therefore, under North Carolina law, because the statute is unambiguous on its face, "judicial inquiry is complete." *State v. Daw*, 904 S.E.2d 765, 773 (N.C. 2024) (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). In other words, "we may not 'interpret what has no need of interpretation.'" *Id.* at 772 (quoting *State v. Barco*, 63 S.E. 673, 674 (N.C. 1909)) (statutory analysis "should have ended with the plain language").

When confronted with two prison terms, U.S.S.G. § 4A1.2(k) instructs that "the original term of imprisonment" and "the term of imprisonment imposed upon revocation" are added together and "[t]he resulting total is used to compute the criminal history points." *United States v. Stuart*, 1 F.4th 326, 331 (4th Cir. 2021) ("[W]hen one offense yields both an originally served sentence and a separate revocation sentence following a violation of release, the two sentences are combined and treated as a single sentence for purposes of computing the offense's criminal history points.").[4]

---

[4] Edwards flags that *Stuart* found § 4A1.2(k)(1) "inapplicable" to a North Carolina sentence that was "originally suspended, but later activated." 1 F.4th at 331. But Stuart did not receive an original prison term of any kind (whether as a special probation condition or otherwise); his imprisonment was suspended in its entirety. As a result, § 4A1.2(k)(1) was "inapplicable" in *Stuart* because, unlike here, no aggregation could be performed. *Id.*

We therefore find that, in accordance with N.C. Gen. Stat. § 15A-1351(a)'s plain meaning, the district court properly combined Edwards's 53-day term ("the original term of imprisonment") and his 12-month term ("the term of imprisonment imposed upon revocation") to calculate a total sentence of 12 months and 53 days.  U.S.S.G. § 4A1.2(k). This sentence exceeds one year and one month and merits three criminal history points. *See id.* §§ 4A1.1(a), 4A1.2(e)(1).

Although we find that the plain meaning controls and ends our inquiry, we address Edwards's arguments against this outcome—perhaps best slated as arguments for why "a literal interpretation of the language of a statute will lead to absurd results."  *Frye*, 510 S.E.2d at 163.  First, Edwards highlights that the 53-day term was equivalent to the time he served pre-trial.  He argues that by imposing this term the state court was offering a credit that, absent revocation, would not be used.  *See* J.A. 48 (The court "g[ave] him credit so that he doesn't just do time for nothing.").  But North Carolina expressly sanctions the possibility of unused credits in this context: it holds that pre-trial confinement need not be credited to the active term.  *See* N.C. Gen. Stat. Ann. § 15A-1351(a) ("the judge may credit any time spent committed or confined, as a result of the charge, to either the suspended sentence *or* to the imprisonment required for special probation") (emphasis added).

In addition, North Carolina courts have discretion to simply impose short active terms.  *See*, *e.g.*, *State v. Blackburn*, 699 S.E.2d 139 (N.C. Ct. App. 2010) (unpublished) (suspended terms of over eight months and active term of eight days); *State v. Dong Jin Kim*, 723 S.E.2d 174 (N.C. Ct. App. 2012) (unpublished) (suspended term of nine months and active term of 20 days).  As a result, while we agree with the district court that the pre-

8

trial overlap here presents certain "oddities," J.A. 51, the state record, on its face, indicates that the court exercised its discretion and imposed the full 53 days *as* the active term.

Edwards also contends that the inclusion of the 53-day term within the 12-month term is illustrated by the fact that the state court credited him the 53 days when it activated the suspended sentence. However, the North Carolina Supreme Court has made clear that credit is given for time served under special probation because a defendant should be "credited with all time defendant was in custody and not at liberty as a result of the charge"—not because the days are a portion of the now-activated term. *State v. Farris*, 444 S.E.2d 182, 184–85 (N.C. 1994).

Moreover, credit-focused arguments are unlikely to refute a sentencing statute's plain meaning because a credit determination often presents a separate inquiry. As shown here, special probation credit reduces the time served but not the literal sentence imposed. *See id.* And, ultimately, under the Guidelines, "criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 cmt. n.2.

Lastly, Edwards argues that the Guidelines define a "sentence of imprisonment" as the "maximum sentence imposed," and a 12-month-and-53-day sentence would go beyond the original 12-month suspended maximum. *See* U.S.S.G. § 4A1.2(b). We find that this argument stretches § 4A1.(2)(b) too far. This definition merely informs us that the Guidelines look to the maximum when evaluating a single prison term with a range (e.g., a 24-to-30-month term is 30 months). Plus, by focusing on the suspended maximum, Edwards assumes that this prison term must be activated in full. Instead, North Carolina courts may reduce its length. *See* N.C. Gen. Stat. Ann. § 15A-1351(a) ("The court may

9

revoke, modify, or terminate special probation as otherwise provided for probationary sentences."); *id.* § 15A-1344(d) ("The court, before activating a sentence to imprisonment established when the defendant was placed on probation, may reduce the sentence," excepting certain minimums). As such, the state court could have reduced Edwards's 12-month suspended term (thereby creating a shorter total sentence), but it opted not to do so.

In sum, the Court remains unconvinced that N.C. Gen. Stat. Ann. § 15A-1351(a)'s plain meaning should not control, and its plain meaning creates two separate prison terms. The district court therefore properly combined these terms under U.S.S.G. § 4A1.2(k)(1).

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED.*

10